IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EARL JANIS, JR. and<br>TONI JANIS | )<br>)<br>) | |
| Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 17-167-MN-SRF |
| A.W. CHESTERTON, INC., et al | )<br>)<br>) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of Armstrong International, Inc. ("Armstrong") (D.I. 114), CBS Corporation[1] ("CBS") (D.I. 109), CertainTeed Corporation ("CertainTeed") (D.I. 111), DAP, Inc. ("DAP") (D.I. 107), and Union Carbide Corporation ("Union Carbide") (D.I. 113) (collectively, "defendants"). Plaintiffs, Earl Janis Jr. ("Mr. Janis") and Toni Janis ("Mrs. Janis") (collectively, "plaintiffs"), did not respond to these motions. As indicated in the chart *infra* and for the reasons that follow, the court recommends GRANTING each defendant's motion for summary judgment.[2]

---

[1] CBS is a successor to Westinghouse Electric Corporation ("Westinghouse"). (D.I. 110 at 1)
[2] Armstrong's opening brief in support of its motion for summary judgment is D.I. 116, CBS' opening brief in support of its motion for summary judgment is D.I. 110, CertainTeed's opening brief in support of its motion for summary judgment is D.I. 112, DAP's opening brief in support of its motion for summary judgment is D.I. 108, and Union Carbide's opening brief in support of its motion for summary judgment is D.I. 115.

| Defendant | Motion for Summary Judgment |
|---|---|
| Armstrong International, Inc. | GRANT |
| CBS Corporation | GRANT |
| CertainTeed Corporation | GRANT |
| DAP, Inc. | GRANT |
| Union Carbide Corporation | GRANT |

## II. BACKGROUND

### a. Procedural History

On November 2, 2016, plaintiffs originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Janis's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On February 16, 2017, the case was removed to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[3] and 1446. (D.I. 1) Armstrong, CBS, CertainTeed, DAP, and Union Carbide filed motions for summary judgment, individually. (D.I. 114; D.I. 109; D.I. 111; D.I. 107; D.I. 113) Plaintiffs did not respond to these motions.[4]

### b. Facts

#### i. Mr. Janis's alleged exposure history

Plaintiffs allege that Mr. Janis developed lung cancer as a result of exposure to asbestos-containing materials during his service as a machinist mate in the United States Navy and as a construction worker at Ray Thompson Construction Company. (D.I. 1, Ex. 1 at ¶ 23) Plaintiffs contend that Mr. Janis was injured due to exposure to asbestos-containing products that

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).
[4] DAP (D.I. 124), CBS (D.I. 125), CertainTeed (D.I. 125), and Union Carbide (D.I. 125) requested that their motions be granted based on no opposition.

2

defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶¶ 29-30) Accordingly, plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, loss of consortium, conspiracy, and punitive damages. (*See* D.I. 1, Ex. 1)

Mr. Janis served in the Navy from 1971-1975. (D.I. 110, Ex. B at 60:13-17; D.I. 112, Ex. A at 68:12-14) Mr. Janis started his service as a machinist's mate onboard the *USS Aeolus* and then onboard the *USS Richard L. Page*. (D.I. 110, Ex. B at 64:5-7, 65:22-24) He then served on the *USS Yellowstone*, which is a tender, a ship that never moved and instead served as a repair ship for other ships. (*Id.* at 73:6-10, 74:8-15) Finally, Mr. Janis served on the *USS Santa Barbara*, an ammunition carrier. (*Id.* at 81:22-82:4) As a machinist's mate, he installed valves and pumps. (*Id.* at 104:1-5) He would sometimes need to remove a motor and deliver it to electricians to complete the work. (*Id.* at 104:18-21) While he did not perform any work on motors, he had to remove insulation in order to remove and transport the motor to the electrician. (*Id.* at 104:22-105:3, 105:7-13)

Mr. Janis started working for Ray Thompson's construction company over the weekends in 1974. (D.I. 115, Ex. A at 70:8-12) While working for Ray Thompson, he installed floors, sheetrock, insulation, roofing, windows, and doors. (*Id.* at 70:13-18) Mr. Janis described how he installed sheetrock by applying a thin coat of sheetrock mud, then tape, and a heavier coat of sheetrock mud. (*Id.* at 79:6-8) The mud compound either came pre-mixed in an iron bucket or as a powder in a bag that needed to be mixed with water. (*Id.* at 79:12-80:4) He testified that pouring powder into a mixing bucket dispersed the product into the air and he inhaled the resulting dust. (*Id.* at 80:5-14, 84:1-8) Mr. Janis also replaced floors using a product that came in a roll. (*Id.*, Ex. C at 164:12-18) When Mr. Janis replaced roofing, he used a three-tab asphalt roofing shingle. (D.I. 112, Ex. C at 169:19-24) He cut the shingles and performed installation.

3

(*Id.* at 173:14-23) Mr. Janis was diagnosed with lung cancer in February 2016. (D.I. 112, Ex. A at 16:11-13)

### ii. Plaintiff's product identification evidence

Plaintiff is the sole product identification witness in this case and his deposition occurred on February 23, 2017. (D.I. 12)

#### 1. Armstrong, International, Inc.

Mr. Janis identified Armstrong as a manufacturer of a flooring product that he used as a construction worker. (D.I. 115, Ex. C at 164:12-23) There is no evidence of record that has been submitted to the court indicating where, when, and how plaintiff was exposed or whether such exposure was to an asbestos-containing Armstrong product.

#### 2. CBS Corporation

Mr. Janis did not identify any Westinghouse products or exposure to any asbestos-containing Westinghouse products. (*See* D.I. 110, Ex. B) Mr. Janis recounted how he worked around motors while serving in the Navy. However, he admitted that he performed no work on the motors themselves, did not know the number of times he had to remove motors, did not know the number of times the insulation was previously removed prior to his contact with it, and did not know on which ships he performed this task. (*Id.* at 105:7-9, 105:21-106:5)

#### 3. CertainTeed Corporation

Mr. Janis identified CertainTeed as a manufacturer shingles he used in roofing jobs as a construction worker. (D.I. 112, Ex. C at 169:13-18) Mr. Janis described the shingles as a three-tab asphalt roofing shingle. (*Id.* at 169:19-24) He stated that the shingles were packaged with a wrap around them. (*Id.* at 175:1-5) He testified that there were no other words other than "CertainTeed" and "asbestos" on the packaging. (*Id.* at 175:13-24) Mr. Janis could not recall

4

the color of the packaging. (*Id.* at 175:17-19)

### 4. DAP, Inc.

Mr. Janis did not identify any asbestos-containing DAP products or exposure to any DAP products. Plaintiffs have not come forward with any evidence in the record to refute DAP's representation that nothing exists in the record concerning an exposure to DAP's products.

### 5. Union Carbide Corporation

Mr. Janis did not identify any asbestos-containing Union Carbide products or exposure to any Union Carbide products. (*See* D.I. 115, Ex A; Ex. C) Union Carbide mined and milled a unique asbestos fiber called "Calidria." (*Id.* at 4; Ex. D) Calidria was not sold to individual customers, but rather to third-party manufacturers, including Georgia-Pacific and Armstrong. (*Id.* at 4-5; Ex. D; Ex. E) Georgia-Pacific and Armstrong may have used Calidria in their joint compound and flooring, respectively. (D.I. 115 at 5-6) Mr. Janis described his exposure to Georgia-Pacific's pre-mixed mud compound and dry mix compound, Kaiser Gypsum's compound, and Armstrong's rolled flooring. (*Id.*, Ex. A at 79:9-22, 84:15-85:11; Ex. C at 164:19-23, 176:23-177:8) Mr. Janis testified that Georgia-Pacific's dry mix compound needed to be mixed with water, but pouring powder into a mixing bucket dispersed the product into the air and he inhaled the resulting dust. (*Id.*, Ex. A at 80:5-14; 84:1-8) He could not quantify how many times he repeated this process during his career as a construction worker, but indicated that he did this many times. (*Id.* at 84:10-14, 85:15-22) He could not remember whether the Kaiser Gypsum compound was pre-mixed or needed to be mixed. (*Id.*, Ex. C at 177:14-16) Mr. Janis also could not recall how many times he installed flooring. (*Id.* at 164:6-11)

5

## III. LEGAL STANDARD

### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[5] A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168,

---

[5] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

7

175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval and sea-based claims.[6] (D.I. 98) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[7] in causing the injury he suffered." *Lindstrom v. A-C Prod.*

---

[6] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[7] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

8

*Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).[8]

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[9] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand,

---

[8] Previously, courts in this Circuit recognized a third element and required a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged," *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012), because the majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012). However, the Third Circuit rejected the bare metal defense, and held that a manufacturer of a "bare metal" product may be held liable for injuries sustained from later-added asbestos-containing materials, if the facts show that the plaintiff's injuries were a reasonably foreseeable result of the manufacturer's failure to provide a reasonable and adequate warning. *In re: Asbestos Prod. Liab. Litig. (Devries)*, 873 F.3d 232, 240 (3d Cir. 2017). This decision is currently under review by the Supreme Court of United States; on May 14, 2018, the Supreme Court granted the Petition for a Writ of Certiorari of the *Devries* decision. *See Air & Liquid Sys. Corp. v. Devries*, No. 17-1104, 2018 WL 753606 (U.S. May 14, 2018).

[9] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

9

"'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

### c. South Carolina Law

The parties do not dispute that South Carolina law applies to all land-based claims. (D.I. 98) In *Henderson v. Allied Signal, Inc.*, 644 S.E.2d 724 (S.C. 2007), the Supreme Court of South Carolina adopted the "frequency, regularity, and proximity test" outlined in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986). *See Henderson*, 644 S.E.2d at 727. "To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* (internal quotation marks omitted). "Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment under such a theory would depend upon the frequency of the use of the product and the regularity or extent of the plaintiff's employment in proximity thereto." *Lohrmann*, 782 F.2d at 1162 (internal quotation marks omitted).

## IV. DISCUSSION

### a. Armstrong International, Inc.

The court recommends granting Armstrong's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether Mr. Janis was exposed to an asbestos-containing Armstrong product. Because plaintiffs have not introduced evidence demonstrating sufficient frequency, regularity, and proximity of exposure to Armstrong's products, as required under South Carolina law, the court recommends granting Armstrong's motion for summary judgment.

### b. CBS Corporation

The court recommends granting CBS's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Janis was exposed to an asbestos-containing product made by Westinghouse. CBS asserts that Mr. Janis did not associate any asbestos exposure with Westinghouse motors but instead with the insulation. (D.I. 110 at 5) Additionally, CBS notes that Mr. Janis was unable to quantify how often he removed motors during his service in the Navy. (*Id.*) Because Mr. Janis is unable to articulate how often he removed motors or had exposure to these motors, his deposition testimony fails to create a genuine issue of material fact as to whether CBS's products were a substantial contributing factor to his injuries, as required under maritime law. (*Id.*, Ex. B at 104:18-106:5) Therefore, the court recommends granting CBS's motion for summary judgment.

### c. CertainTeed Corporation

The court recommends granting CertainTeed's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Janis was exposed to an asbestos-containing CertainTeed product. Although Mr. Janis identified CertainTeed as a

manufacturer of three-tab asphalt roofing shingles he worked with, CertainTeed argues that Mr. Janis's description of the shingles indicates that the shingles he encountered did not contain asbestos. (D.I. 112 at 5) Mr. Janis described the CertainTeed shingles he worked with as three-tab asphalt roofing shingles. (*Id.*, Ex. C at 169:19-24) CertainTeed claims that it did not manufacture any three-tab asphalt roofing shingles that contained asbestos, with the exception of a period of a few months in 1973 and 1974. (*Id.* at 5; Ex. D) During this time, CertainTeed manufactured three-tab shingles that contained asbestos in their Dallas and Chicago Heights roofing plants. (*Id.* at 5; Ex. D) CertainTeed contends that Mr. Janis would not have been exposed to asbestos-containing CertainTeed products for two main reasons. First, his description of the packaging for the shingles he used is inconsistent with CertainTeed's packaging for their three-tab, asbestos-containing shingles. (*Id.* at 5) Mr. Janis described the packaging as a wrap around the shingles, on which the words "CertainTeed" and "asbestos" were printed. (*Id.*, Ex. C at 175:3-5, 175:13-24) Second, because Mr. Janis was working in South Carolina, the CertainTeed roofing shingles he was exposed to would have been manufactured at the roofing plant in Savannah, Georgia – not in the Dallas and Chicago Heights roofing plants. (*Id.* at 5; Ex. D)

Plaintiffs fail to provide evidence from the record which would create a material issue of fact that the CertainTeed products to which Mr. Janis was exposed contained asbestos, or that Mr. Janis encountered CertainTeed products with sufficient frequency, regularity, and proximity, as required under South Carolina law. As such, the court recommends granting CertainTeed's motion for summary judgment.

### d. DAP, Inc.

The court recommends granting DAP's motion for summary judgment because there is no genuine issue of material fact in dispute as to whether Mr. Janis was exposed to an asbestos-containing Armstrong product. During Mr. Janis's deposition, he did not identify any DAP product. Because plaintiffs have not introduced evidence demonstrating sufficient frequency, regularity, and proximity of exposure to DAP's products, as required under South Carolina law, the court recommends granting DAP's motion for summary judgment.

### e. Union Carbide Corporation

The court recommends granting Union Carbide's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Janis was exposed to an asbestos-containing Union Carbide product. Union Carbide notes that they milled and mined raw asbestos fiber called "Calidria" that it sold to third-party manufacturers. (D.I. 115 at 4-5; Ex. D; Ex. E) Union Carbide contends that it was a minority supplier to Georgia-Pacific and Armstrong, and never sold to Kaiser Gypsum in the relevant distribution area. (*Id.* at 4-6; Ex. D; Ex. E) It argues that there is no evidence that Mr. Janis was exposed to Calidria asbestos from any Georgia-Pacific, Kaiser Gypsum, or Armstrong product. (*Id.* at 10-11) Although Mr. Janis has testified that he was exposed to Georgia-Pacific, Kaiser Gypsum, and Armstrong products, he was unable to provide details as to when, where, and how frequently he was exposed to these products. (*Id.*, Ex. A at 84:10-18, 85:8-22; Ex. C at 164:6-11) Mr. Janis was also unable to describe the appearance of Kaiser Gypsum's joint compound. (*Id.*, Ex. C at 177:14-24) Plaintiffs have failed to provide evidence from the record sufficient to create a material issue of fact as to whether there was sufficient frequency, regularity, and proximity of Mr. Janis's

exposure to Union Carbide's product, as required under South Carolina law. Consequently, the court recommends granting Union Carbide's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
| --- | --- |
| Armstrong International, Inc. | GRANT |
| CBS Corporation | GRANT |
| CertainTeed Corporation | GRANT |
| DAP, Inc. | GRANT |
| Union Carbide Corporation | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 17, 2019

_____
Sherry R. Fallon
United States Magistrate Judge