IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EARL JANIS, JR. and<br>TONI JANIS<br><br>    Plaintiffs,<br><br>v.<br><br>A.W. CHESTERTON, INC., et al<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 17-167-MN-SRF<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

### I. Introduction

Presently before the court in this asbestos-related personal injury action are three motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by FMC Corporation ("FMC")[1], Warren Pumps, LLC ("Warren"), and Ingersoll Rand Co. ("Ingersoll Rand") (collectively, "defendants"). (D.I. 100; D.I. 102; D.I. 104) For the following reasons, I recommend GRANTING defendants' motions for summary judgment.[2]

### II. Background

#### a. Procedural History

On November 2, 2016, plaintiffs Earl Janis Jr. ("Mr. Janis") and Toni Janis ("Mrs. Janis") (collectively "plaintiffs") originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Janis's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On February 16, 2017, the case was removed to this court

---

[1] FMC was sued individually and as a successor to Northern Pump Company, Coffin, Chicago Pump Company, and Peerless. (D.I. 1, Ex. 1)
[2] The briefing for the pending motion is as follows: FMC (D.I. 101; D.I. 117; D.I. 121), Warren (D.I. 103; D.I. 118; D.I. 122), and Ingersoll Rand (D.I. 105; D.I. 119; D.I. 123).

by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[3] and 1446. (D.I. 1) On June 4, 2018, defendants filed their pending motions for summary judgment. (D.I. 100; D.I. 102; D.I. 104)

### b. Facts

Plaintiffs allege that Mr. Janis developed lung cancer as a result of exposure to asbestos-containing materials during his service as a machinist mate in the United States Navy. (D.I. 1, Ex. 1 at ¶ 23) Plaintiffs contend that Mr. Janis was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶¶ 29-30) Accordingly, plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, loss of consortium, conspiracy, and punitive damages. (*See* D.I. 1, Ex. 1)

Mr. Janis was deposed on February 23, 2017. (D.I. 12) Plaintiffs did not produce any other fact or product identification witnesses for deposition.

Mr. Janis served in the Navy from 1971-1975. (D.I. 117, Ex. A at 34:9-25, 36:1-38:19) Mr. Janis started his service onboard the *USS Aeolus* from 1971-1972. (*Id.* at 34:3-18) He served aboard the *USS Richard L. Page* from 1972-1974. (*Id.* at 34:20-23, 36:1-15) He continued his service aboard the *USS Yellowstone* in 1974. (*Id.* at 36:16-23) The *USS Yellowstone* was a tender, a ship that never moved and instead served as a repair ship for other ships. (*Id.* at 36:22-37:2) Finally, Mr. Janis served on the *USS Santa Barbara* from 1974-1975. (*Id.* at 37:10-38:11)

Mr. Janis worked as a machinist mate and was responsible for installing, repairing, and

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

2

maintaining valves and pumps onboard the USS *Aeolus*, USS *Richard L. Page*, USS *Yellowstone*, and USS *Santa Barbara*. (*Id.* at 40:5-9, 40:14-17) Mr. Janis changed gaskets for pumps and valves by removing, scraping, and cleaning them. (*Id.* at 43:14-15) He would reinstall gaskets by either using a pre-made gasket or cutting out more gasket material and fashioning a new one. (*Id.* at 46:4-24) Mr. Janis testified that removing gaskets and creating new gaskets out of the provided gasket material dispersed products into the air, producing visible particles that he inhaled. (*Id.* at 44:6-25, 47:4-10)

Mr. Janis also replaced packing from valves and pumps. (*Id.* at 47:11-22, 49:22-25, 57:5-14) He would remove old packing by scraping and pulling it with a knife or screwdriver. (*Id.* at 47:21-48:5) Mr. Janis testified that removing packing created particles in the air because the packing would fall apart, and he inhaled this resulting dust. (*Id.* at 48:10-21) In replacing the packing, he would cut new packing, which also produced particles in the air which he inhaled. (*Id.* at 49:11-21) Mr. Janis's duties also included reinstalling insulation on the pumps. (*Id.* at 60:15-17) He would remove the old insulation on the pipe and wrap new material tightly around the pump before painting the new insulation. (*Id.* at 60:18-61:1) Mr. Janis testified that the process of reinstalling insulation on pumps would similarly create dust that he inhaled. (*Id.* at 61:2-12)

After being honorably discharged from the Navy, Mr. Janis worked as a construction worker at Ray Thompson Construction Company in Charleston, South Carolina until 2004. (D.I. 1, Ex. 1 at ¶ 23) Mr. Janis was diagnosed with lung cancer in February 2016.[4] (D.I. 101, Ex. B

---

[4] Mr. Janis started smoking when he started serving in the Navy and continued to smoke until he quit about ten years ago. (D.I. 101, Ex. B at 15:15-16:1) When he smoked, he would smoke between one half of a pack and one pack every day. (*Id.* at 16:2-6) Defendants suggest that plaintiffs are unable to prove causation in light of Mr. Janis's past smoking habits. (D.I. 101 at 15) Here, neither plaintiffs nor defendants have produced expert testimony regarding Mr.

at 16:13)

## III. Legal Standard

### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored

---

Janis's history of smoking. In similar asbestos cases where the plaintiff has a past smoking habit and the parties have submitted expert testimony or reports, courts have not considered this smoking history. *See Brown v. General Elec. Co.*, 2012 WL 7761251 (E.D. Pa. 2012) (granting defendant's motion for summary judgment without discussion of plaintiff's past smoking habits in its analysis, even with an expert produced by defendant); *In re Asbestos Litig.*, 2014 WL 605844 (Del. Super. Ct. 2014) (concluding plaintiffs failed to meet product nexus standard under maritime or Arkansas law without analyzing plaintiff's past smoking habits, despite expert testimony produced by defendant). Therefore, Mr. Janis's smoking history is not considered relevant for purposes of this Report and Recommendation.

4

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[5]

---

[5] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

5

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval/sea-based claims.[6] In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor[7] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30,

---

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

[6] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[7] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

6

2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).[8]

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[9] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is

---

[8] Previously, courts in this Circuit recognized a third element and required a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged," *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012), because the majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012). However, the Third Circuit rejected the bare metal defense, and held that a manufacturer of a "bare metal" product may be held liable for injuries sustained from later-added asbestos-containing materials, if the facts show that the plaintiff's injuries were a reasonably foreseeable result of the manufacturer's failure to provide a reasonable and adequate warning. *In re: Asbestos Prod. Liab. Litig. (Devries)*, 873 F.3d 232, 240 (3d Cir. 2017). This decision is currently under review by the Supreme Court of United States; on May 14, 2018, the Supreme Court granted the Petition for a Writ of Certiorari of the *Devries* decision. *See Air & Liquid Sys. Corp. v. Devries*, No. 17-1104, 2018 WL 753606 (U.S. May 14, 2018).
[9] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

7

insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

## IV. Discussion

### a. Applicable Standard

As a preliminary matter, plaintiffs repeatedly assert that the *Lindstrom* standard used by the defendants is inapplicable because the standard articulated by the Third Circuit in *Devries* should instead apply. (D.I. 117 at 8-9; D.I. 118 at 8-9; D.I. 119 at 9-10) In *Devries*, the Third Circuit rejected the bare metal defense, under which "a manufacturer who delivers a product 'bare metal' – that is without the insulation or other material that must be added for the product's proper operation – is not generally liable for injuries caused by asbestos in later-added materials." *Devries*, 873 F.3d at 234, 240. Here, the bare metal defense is not in issue because the defendants are challenging at the outset the plaintiffs' ability to show substantial factor causation under *Lindstrom*, i.e., lack of sufficient product exposure and no nexus to causation of injuries. (D.I. 101 at 13-14; D.I. 103 at 8; D.I. 105 at 8-9; D.I. 121 at 7-8; D.I. 122 at 2; D.I. 123 at 2)

### b. FMC's Motion for Summary Judgment

Under *Lindstrom*, the plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom*, 424 F.3d at 492. FMC argues that plaintiffs failed to provide evidence that Mr. Janis

8

was exposed to an asbestos-containing product manufactured or supplied by FMC and, if there was such exposure, plaintiffs have not shown that it was so frequent to be deemed a substantial factor in causing Mr. Janis's injury. (D.I. 101 at 2) Mr. Janis has testified about valves, pumps, and the names of multiple brands including Chicago pumps and Peerless pumps that he was exposed to during his career.[10] However, he was unable to give any details as to where he had seen these specific pumps, the physical attributes of the pumps, how often he was exposed to these pumps, or whether these pumps specified the use of asbestos-containing gaskets or packing. (*Id.* at 13, 15; Ex. C at 100:9-24, 101:10-13, 101:23-102:6, 186:12-14, 193:8-18)

Plaintiffs rely on two pieces of evidence to establish substantial factor causation under *Lindstrom*: (1) the ship records showing Northern pumps were aboard the *USS Richard L. Page* and Chicago pumps were aboard the *USS Aeolus* and (2) Mr. Janis's testimony that he worked on pumps hundreds of times. (D.I. 117 at 7-9; *see also* D.I. 117, Ex. G; D.I. 134 at 68:1-3) First, the ship records serve only to identify that FMC's products were onboard some of the ships on which Mr. Janis served. *See Lindstrom*, 424 F.3d at 492 ("[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.").

Second, Mr. Janis's testimony is similarly insufficient to create a factual dispute concerning causation. A plaintiff must provide evidence of "sufficient frequency, regularity, or proximity" to a product to create a genuine issue of material fact regarding substantial factor causation. *Thomasson v. Air & Liquid Systems Corp.*, 2015 WL 1639730, at *3-4 (D.N.J. Apr. 9, 2015). Mr. Janis, however, is unable to provide details regarding the type or size of any particular manufacturer's pump. (D.I. 101, Ex. C at 100:9-12, 100:17-19) He also could not

---

[10] Plaintiffs have conceded that Mr. Janis has not identified and was not exposed to a Northern pump. (D.I. 135 at 22:16-23:1)

9

recall the application of any particular manufacturer's pumps onboard any ship or the number of times he would have worked on a particular manufacturer's pump. (*Id.* at 100:13-16, 100:20-24) More specifically, Mr. Janis could not recall on which ship he was exposed to a Chicago or Peerless pump, or any specific work he did on these pumps. (*Id.* at 212:16-18, 213:8-25, 216:17-20, 217:3-23) He could not testify as to the shape, size, horsepower, material, or model or series number of Chicago or Peerless pumps. (*Id.* at 211:15-23, 212:2-6, 215:19-21, 216:3-5) Moreover, Mr. Janis was unable to provide details regarding what substance flowed through Chicago or Peerless pumps or to what mechanisms these pumps were attached. (*Id.* at 212:7-15, 216:6-16) Finally, Mr. Janis did not know the composition of the insulation or gaskets, or if they contained asbestos. (*Id.*, Ex. B at 45:13-25)

Mr. Janis's testimony that he worked on pumps hundreds of times does not establish a material issue of fact concerning whether he was exposed to Chicago or Peerless pumps such that they were a substantial factor in causing his injury. This testimony establishes that Mr. Janis has generally worked on pumps manufactured by varied manufacturers hundreds of times during his naval service spanning from 1971 to 1975. It would be speculative for the court to determine that plaintiff was exposed to FMC's products with such "frequency, regularity, and proximity" that such exposure was a substantial factor causing his injury. *See Thomasson*, 2015 WL 1639730, at *3-4; *Lindstrom*, 424 F.3d at 492; *Damon v. Aireon Manuf. Corp.*, 2015 WL 9461593, at *1 n.1 (E.D. Pa. Sept. 1, 2015) (granting defendant's motion for summary judgment even when there was evidence presented that plaintiff worked with defendant's equipment and was exposed to dust through that work because there was no evidence that the dust or equipment contained asbestos). Therefore, the court recommends granting FMC's motion for summary judgment.

### c. Warren's Motion for Summary Judgment

Warren argues that plaintiffs cannot show that Warren's products were a substantial factor in causing Mr. Janis's injury because although Mr. Janis has a general recollection of Warren pumps in the Navy, he could not place a Warren pump on any particular ship or provide information regarding the frequency with which he was exposed to Warren pumps. (D.I. 103 at 8) Additionally, Warren argues that plaintiffs do not allege Mr. Janis was exposed to asbestos from a *pump*, but instead from other materials he was exposed to while working in the Navy. (*Id.*) Warren asserts plaintiffs have not provided any evidence that these other materials contained asbestos. (*Id.* at 8-9)

Plaintiffs counter that Mr. Janis worked on pumps hundreds of times while enlisted in the Navy and recognized Warren pumps because its name was on boxes of new pumps and on the pumps themselves. (D.I. 118 at 7; D.I. 134 at 68:1-3) Plaintiffs argue that Mr. Janis handled hundreds of pumps, working in close proximity with them on a regular, daily basis. (D.I. 118 at 8) Therefore, plaintiffs determine, one can reasonably conclude that exposure to Warren's product was a substantial factor in causing Mr. Janis's injury. (*Id.*)

Plaintiffs' reliance on Mr. Janis's testimony is insufficient to create a factual dispute as to causation because he is unable to provide details regarding his specific work with Warren pumps. For example, Mr. Janis could not recall where any Warren pump was located on the *USS Richard L. Page*. (D.I. 103, Ex. A at 194:5-12) Additionally, he could not provide any details regarding the function, application, size, shape, or color of any pumps he may have worked on aboard the *USS Richard L. Page*. (*Id.* at 194:13-24) Further, Mr. Janis could not state the number of times he would have worked on any particular pump. (D.I. 122, Ex. A at 100:20-24)

Finally, Mr. Janis did not know the composition of insulation, packing, or gasket material contained, or whether it contained asbestos. (D.I. 103, Ex. A at 109:19-110:6)

Mr. Janis's testimony, at best, asserts that he generally worked on pumps hundreds of times. Without specific testimony regarding the "frequency, regularity, and proximity" of his work specifically with Warren pumps, the court would only be speculating as to whether plaintiff's alleged exposure to Warren's products was a substantial factor causing his injury. *See Thomasson*, 2015 WL 1639730 at *3-4. Thus, plaintiff's testimony fails to create a genuine issue of material fact as to the causation inquiry. *See Lindstrom*, 424 F.3d at 492; *Damon*, 2015 WL 9461593, at *1 n.1. Accordingly, the court recommends granting Warren's motion for summary judgment.

### d. Ingersoll Rand's Motion for Summary Judgment

Ingersoll Rand avers that Mr. Janis is similar to the plaintiff in *Lindstrom* because he is unable to do any more than identify Ingersoll Rand as a manufacturer of pumps installed aboard the *USS Aeolus, USS Richard L. Page*, or *USS Yellowstone*. (D.I. 105 at 6-9) Ingersoll Rand notes that, similar to the plaintiff in *Moeller v. Garlock Sealing Technologies, LLC*, 660 F.3d 950, 955 (6th Cir. 2011), Mr. Janis personally worked with equipment every day and some of that equipment was manufactured by Ingersoll Rand. (*Id.* at 7) *See also Moeller*, 660 F.3d at 955 (concluding that although some of the gaskets were made by defendant, plaintiff still could not establish substantial factor causation because he could not show how many of defendant's gaskets he removed or how frequently he removed them). Additionally, Ingersoll Rand argues that Mr. Janis could not quantify the frequency with which he was exposed to Ingersoll Rand pumps and that plaintiffs now allege Mr. Janis was exposed to asbestos from other materials he used during his service – not contained within the pumps themselves. (D.I. 105 at 8-9)

Plaintiffs argue that one could make a reasonable conclusion beyond speculation that Mr. Janis worked on Ingersoll Rand pumps on a frequent basis, such that this exposure was a substantial factor in causing his injury. (D.I. 119 at 8-9) To prove this, plaintiffs heavily rely upon: (1) ship records indicating that Ingersoll Rand pumps were on the *USS Yellowstone* and (2) Mr. Janis's testimony that he worked on pumps hundreds of times as a machinist mate. (*Id.* at 8)

Although plaintiffs cite ship records placing Ingersoll Rand pumps aboard the *USS Yellowstone*, this serves only to identify that Ingersoll Rand's products were onboard some of the ships on which Mr. Janis served. *See Lindstrom*, 424 F.3d at 492 ("[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient."). Additionally, the *USS Yellowstone* was a tender ship, meaning that it remained stationary and repaired the parts of other ships in addition to its own parts. (D.I. 105, Ex. A at 74:4-12, 75:5-17) Mr. Janis was unable to state from which ships the pumps and valves he repaired originated while aboard the *USS Yellowstone*, and recalled a great variety of pump and valve sizes. (*Id.* at 76:6-78:14, 81:14-21)

Similarly, plaintiffs' reliance on Mr. Janis's testimony is insufficient to establish causation because he is unable to provide details regarding the "frequency, regularity, or proximity" of his exposure to Ingersoll Rand pumps. *See Thomasson*, 2015 WL 1639730, at *3-4. At first, Mr. Janis incorrectly identified Ingersoll Rand as a valve manufacturer named "Ingris . . . or something, Rand." (D.I. 123, Ex. A at 52:13-14) Counsel then corrected Mr. Janis's pronunciation and ensured that he was testifying about pump manufacturers instead of valve manufacturers. (*Id.* at 52:17-23) Mr. Janis testified that he did not associate any particular ship with his work on Ingersoll Rand pumps and has no recollection of installing a new Ingersoll

13

Rand pump. (D.I. 105, Ex. A at 205:20-206:16) Although Mr. Janis recalled that he was able to identify an Ingersoll Rand pump because the name was on the pump itself, he could not remember how the name appeared on the pump. (*Id.* at 206:17-25) He also could not recall the color, maintenance history, or size of Ingersoll Rand pumps. (*Id.* at 207:1-25) Further, Mr. Janis does not know what the packing, gasket, or insulation material contained, or if they contained asbestos. (*Id.* at 109:24-110:6; Ex. B at 45:13-46:3) Again, Mr. Janis could not recall the number of times he worked on any particular pump. (*Id.*, Ex. A at 100:20-24)

Plaintiffs contend that Mr. Janis worked on pumps hundreds of times, but this does not establish he was exposed to Ingersoll Rand pumps in particular and that such exposure was a substantial factor in causing his injury. (D.I. 119 at 8) As the record illustrates, there were many different pump manufacturers that supplied pumps to the various ships on which Mr. Janis served. (D.I. 123, Ex. A at 52:7-23) Plaintiff's testimony fails to create a genuine issue of material fact as to whether Ingersoll Rand's products were a substantial factor in causing his injuries. *See Lindstrom*, 424 F.3d at 492; *Damon*, 2015 WL 9461593, at *1 n.1. Therefore, the court recommends granting Ingersoll Rand's motion for summary judgment.

### e. Loss of Consortium

The recommendation for granting defendants' motions for summary judgment for the reasons stated in sections (IV)(b)-(d) *supra* eliminates the need to consider plaintiffs' loss of consortium claim. However, for the sake of completeness, this report and recommendation addresses the arguments.

The court recommends granting summary judgment in favor of defendants with respect to plaintiffs' loss of consortium claim. (*See* D.I. 1, Ex. 1 at ¶¶ 106-108) "Maritime law does not allow claims for loss of consortium to non-seamen." *Frango v. Royal Caribbean Cruises*, 891

14

So. 2d 1208, 1210 (3d Cir. 2005). Plaintiffs do not oppose defendants' argument that Mrs. Janis's loss of consortium claim should be dismissed. (*See* D.I. 118; D.I. 119) Thus, the court recommends granting defendants' motions for summary judgment with respect to Mrs. Janis's related loss of consortium claim.

### f. Punitive Damages

The recommendation for granting defendants' motions for summary judgment for the reasons stated in sections (IV)(b)-(d) *supra* eliminates the need to consider punitive damages. However, for the sake of completeness, this report and recommendation addresses the arguments. The court recommends granting summary judgment in favor of defendants with respect to plaintiffs' punitive damages claim.

Punitive damages are limited to situations "where a defendant's conduct is 'outrageous,' 'owing to gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citation omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

In support of their claim, plaintiffs cite to advertisements for defendants' products in the same 1940s issues of the *Southern Power and Industry* magazine, which reported how exposure to asbestos may result in health hazards. (D.I. 118 at 10; D.I. 119 at 11) However, plaintiff fails to produce any evidence regarding defendants' actual knowledge of asbestos hazards or conduct indicative of willful or wanton actions. *See Relyea v. Borg Warner Corp.*, 2014 WL 6736781, at *1 n.1 (E.D. Pa. Oct. 1, 2014); *In re Asbestos Litig.*, C.A. No. 15-395-GMS-SRF, 2017 WL

3592451, at *8 (D. Del. Aug. 21, 2017). Therefore, the court recommends granting defendants' motion for summary judgment with respect to plaintiffs' punitive damages claims.

### g. Conspiracy

The recommendation for granting defendants' motion for summary judgment for the reasons stated in sections (IV)(b)-(d) *supra* eliminates the need to consider plaintiffs' conspiracy claim. However, for the sake of completeness, this report and recommendation addresses the arguments.

The court recommends granting summary judgment in favor of defendants with respect to plaintiffs' conspiracy claim. In Counts X and XI of the complaint, plaintiffs allege defendants conspired to withhold information about "the hazards of asbestos and the methods for protecting themselves from that danger." (D.I. 1, Ex. 1 at ¶ 66) Plaintiffs aver that because of this conspiracy, Mr. Janis was "never advised of the dangers of asbestos nor of the methods for protecting [himself] from inhaling or ingesting asbestos. Due to the acts or omissions of [defendants], workers, including Plaintiff, inhaled or ingested asbestos while using Defendant's products." (*Id.*)

"The rule that civil conspiracy may not exist without an underlying tort is a common one. Indeed, we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405-06 (3d Cir. 2000) (internal quotations and citations omitted) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 & n.7 (3d Cir. 1999)). Plaintiffs failed to set forth any legal argument in response to defendants' motions for summary judgment as to the conspiracy claim. (*See* D.I. 118; D.I. 119) As such, plaintiffs have not produced any evidence regarding defendants' agreement to suppress knowledge of the dangers of

16

asbestos, or that they intentionally marketed their asbestos products without effective warnings. Additionally, the court has concluded above that the underlying claim of products liability fails due to lack of causation. Therefore, the court recommends granting defendants' motion for summary judgment with respect to plaintiffs' conspiracy claim.

## V. Conclusion

For the foregoing reasons, the court recommends granting defendants' motions for summary judgment. (C.A. No. 17-167, D.I. 100; D.I. 102; D.I. 104)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 18, 2019

Sherry R. Fallon
United States Magistrate Judge